UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY McGUIRE, a named fiduciary on behalf of
THE UNION CARBIDE EMPLOYEES'
PENSION PLAN,

                Plaintiff,                Case No. 12-cv-10797

v.                                          Honorable Thomas L. Ludington

METROPOLITAN LIFE INSURANCE
COMPANY,

                Defendant.

_____/

**ORDER DENYING MOTION TO SET ASIDE BENCH ORDER ON SANCTIONS**

    Plaintiff Gary McGuire objects to, and by motion seeks to set aside Magistrate Judge Morris's order denying Plaintiff's Motion for Discovery Sanctions. ECF No. 65. Following a series of problems and disagreements regarding the pace of document production during discovery, McGuire sought discovery sanctions. ECF No. 33. McGuire's motion seeking sanctions was referred to Judge Patricia Morris. Judge Morris held a hearing on the motion during which she issued a bench order denying McGuire's motion. ECF No. 64. McGuire now moves to set aside that order and obtain relief for the discovery violations he alleges were committed by Defendant Metropolitan Life Insurance.

**I.**

    The relevant facts of this case are familiar to all involved and have been recited on numerous occasions. *See, e.g.*, ECF No. 99, Aug. 8, 2014 Op. & Order Denying Summ. J. For that reason, only the facts germane to the present motion will be presented.

**A.**

This dispute has been long in the making. It originated with representations by the parties in early May 2013 that depositions would take much longer to complete than originally anticipated. *See* ECF No. 28, May 22, 2013 Order Rejecting & Striking Stipulation. The parties represented that depositions, which they originally believed would be completed by May 31, 2013, would actually take until September 20, 2013 to complete. *Id*. The parties submitted a stipulation that requested an extension of all scheduling dates by "not less than 90 days[.]" *Id*.

In rejecting the stipulation the Court noted that "[w]hile the records may be voluminous [and so require more time in discovery], the parties have had over one year to familiarize themselves with the case." *Id*. The case was initiated on February 22, 2012.

**B.**

On June 6, 2013, shortly after the parties' stipulation was rejected, McGuire sought a status conference. ECF No. 30. According to McGuire, MetLife had informed him that it "had failed to review <u>tens of thousands of potentially responsive documents</u> that it had collected from document custodians." *Id*. at ¶ 2 (emphasis in original). These documents came to light when "MetLife had discovered, for the first time, that two groups of documents collected from custodians were inadvertently omitted from the review process." *Id*. at ¶ 6. The two groups totaled 64,000 documents that needed to be reviewed. *Id*. at ¶¶ 7, 8. This troubled McGuire because "MetLife had previously represented to Plaintiff that it had substantially completed production of documents on April 16, 2013." *Id*. at ¶ 3. This predicament surfaced during conversations between the parties concerning how best to proceed following the Court's May 22, 2013 Order that rejected their stipulation. *Id*. at ¶ 5.

McGuire believed that as a result of this new information, an adjournment of discovery dates, or a firm directive concerning MetLife's document review was necessary. *Id*. at ¶ 12.

McGuire requested that the Court hold a scheduling conference "to discuss the case schedule[.]" *Id*. at ¶ 13.

MetLife responded the next day. ECF No. 31. It concurred with McGuire's request for a status conference, but took issue with how he characterized some of its discovery efforts. *Id*. at ¶ 1. For instance, MetLife argued that it was only on March 29, 2013 that it was made aware of certain specific requests for production made by McGuire. *Id*. at ¶¶ 3, 6. It was then, MetLife contends, that it became aware of its discovery errors. *Id*.

### C.

On June 13, 2013, the Court denied McGuire's motion for a status conference. ECF No. 32, Order Denying Mot. Stat. Conf. That order did, however, modify the case management and scheduling order "to accommodate Defendant's production of the overlooked documents, as well as Plaintiff's subsequent review" of those documents. *Id*. at 3. The scheduling order was amended with an eye toward helping "the parties to focus on completing discovery and organizing the dispositive motions that are likely to be filed." Id.

At the close of the order, the Court "**ORDERED** that Defendant is **DIRECTED** to complete its review of the 64,000 documents and deliver any responsive, non-privileged documents to Plaintiff no later than **July 1, 2013**." *Id*. (emphasis in original). The discovery cutoff date was also extended to November 13, 2013. *Id*.

### D.

Following the June 13, 2013 Order, the parties returned to discovery with little fanfare. Then, on September 23, 2013, McGuire moved for sanctions. ECF No. 33. McGuire sought sanctions for what he alleged were MetLife's dilatory and haphazard discovery practices. McGuire noted that, despite the Court's June 13, 2013 Order directing the production of

responsive, non-privileged documents by July 1, 2013, MetLife had "made 15 supplemental productions, comprising over 37,500 pages" after that date. ECF No. 33, Pl. Br. in Supp. at 8. These productions troubled McGuire because they "have included many key documents that had never before been produced to Plaintiff, and that would never have been produced absent Plaintiff's repeated requests[.]" *Id*. at 9.

McGuire sought sanctions under Federal Rules of Civil Procedure 16(f) & 37(b)(2) because MetLife did not comply with the Court's June 13, 2013 Order. According to McGuire, the June 13, 2013 Order was unambiguous in that it required all responsive, non-privileged document production be completed by July 1, 2013. *Id*. at 12-14. McGuire also sought sanctions under Rule 26(g) because, he alleged, MetLife did not perform a reasonable inquiry into the existence of documents responsive to McGuire's requests for production. *Id*. at 14-17. McGuire asked that monetary sanctions be imposed and that adverse inferences be drawn in his favor. *Id*. at 17-23. As an alternative form of sanction, McGuire requested that the case management and scheduling order be amended so that he may re-depose document custodians armed with the newly produced documents. *Id*. at 24-25.

MetLife opposed this motion. ECF No. 36. In doing so, it set out, in detail, how it uncovered its initial production errors and why it continued to produce documents after the July 1, 2013 cutoff date. ECF No. 36, Def. Resp. Br. at 3-20. MetLife also argued that McGuire misinterpreted the June 13, 2013 Order. That order, MetLife contended, only directed the production of responsive, non-privileged documents from the then-discovered group of 64,000 documents. *Id*. at 22. It did not direct MetLife to complete all document production. Read in this way, MetLife argued, the June 13, 2013 Order was not violated.

MetLife further claimed that sanctions were not warranted because no documents were lost or destroyed, and there was no evidence that it deliberately or negligently failed to produce documents. Any delays in production were attributable to reasonable mistakes that were immediately remedied once discovered. MetLife also offered to "reimburse Plaintiff for the reasonable cost of re-taking Rhea Adler's deposition or other incremental costs specifically caused by the delays in production of the documents." *Id*. at 24.

**E.**

McGuire's motion for sanctions was referred to Judge Morris for consideration on April 29, 2014. ECF No. 59. Judge Morris held a hearing on the motion on May 20, 2014. After hearing argument from both sides, Judge Morris found that McGuire's requested relief was mooted by the fact that they no longer sought to depose any more custodians or potential witnesses. ECF No. 64, Hearing Tr. At 48. Judge Morris also held that the Court's June 13, 2013 Order "does not require what Plaintiff says it does or, if it does require that, . . . it's ambiguous enough that I do not find that Defendants had the requisite state of mind to disobey or not comply with the court order[.]" *Id*. at 49. Judge Morris denied McGuire's motion for sanctions. *Id*.

McGuire sought review of that order on June 3, 2014. ECF No. 65.

**II.**

The decision and order of a non-dispositive motion by a magistrate judge will be upheld unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). A district judge shall consider such objections and may modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. FED. R. CIV. P. 72(a). "The 'clearly erroneous' standard

applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard . . . . Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Mattox v. Edelman*, 2014 WL 4829583, at *2 (E.D. Mich. Sept. 29, 2014) (quoting *Ford Motor Co. v. United States*, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009)).

### III.

McGuire, in his motion to set aside Magistrate Judge Morris' bench order, argues that the order was clearly erroneous for two reasons. ECF No. 65 at 2. First, McGuire claims that this Court's June 13, 2013 Order was clear regarding its discovery directives: that all responsive, non-privileged documents be delivered to Plaintiff "no later than July 1, 2013." *Id*. Second, he contests Magistrate Judge Morris' ruling denying sanctions under FED. R. CIV. P. 26(g). *Id*. at 3. McGuire believes that Magistrate Judge Morris' holding that "ordinary negligence" cannot serve as a basis to challenge a party's good faith assertion of discovery diligence was contrary to law. *Id*. While these arguments, on their face, may have merit, they do not overcome the high standard of deference due a Magistrate Judge's ruling on pretrial matters. For that reason, McGuire's motion will be denied.

### A.

McGuire first claims that it was clear error by Judge Morris to find that this Court's June 13, 2013 Order, ECF No. 32, was ambiguous as to what it required of MetLife. ECF No. 65, Pl. Br. in Supp. at 2-3, 4-7. McGuire makes two points in support of this claim. He states that the

language of the June 13, 2013 Order is clear and that it requires the production of all "responsive, non-privileged documents" by MetLife. *Id*. at 4. In the alternative, McGuire argues that if the June 13, 2013 Order is somehow ambiguous, MetLife's conduct cannot be shielded by that ambiguity.

**1.**

McGuire's first point does not demonstrate that Judge Morris' conclusion—that the June 13, 2013 Order was not entirely clear—is contrary to law. It is unnecessary, in this order, to decide whether the June 13, 2013 Order directed the production of all responsive, non-privileged documents, or just the responsive, non-privileged documents that were among the 64,000 documents MetLife had identified. Rather, it is only necessary to determine whether Judge Morris' determination that the June 13, 2013 Order is ambiguous was contrary to the plain language chose for the order.

It was not. The June 13, 2013 Order could reasonably be interpreted as only requiring MetLife to produce response, non-privileged documents from the batch of 64,000 documents MetLife had already identified. This reading is, at least in part, supported by other portions of the June 13, 2013 Order. For example, the order line relied upon begins by directing MetLife "to complete its review of the 64,000 documents" before continuing to direct the delivery of responsive, non-privileged documents. Furthermore, the June 13, 2013 Order extended discovery until November 13, 2013. While discovery consists of more than just document production, it is not unreasonable to believe that the Court was allowing for continued production requests, and corresponding production, unrelated to the batch of 64,000 documents.

McGuire's reading of the directive in the June 13, 2013 Order may be its most logical or persuasive reading. But that is not the standard under which pretrial orders of a magistrate judge are reviewed.

**2.**

McGuire then presents an alternative argument. Under this argument MetLife should still be sanctioned even if there is ambiguity in the June 13, 2013 Order. This is "because any ambiguity . . . was based on MetLife's inaccurate explanation to the Court concerning the reasons for its inadequate production, which the June 13 Order explicitly states the Court 'accepted.'" ECF No. 65 at 5.

But Judge Morris' conclusion that the June 13, 2013 Order was ambiguous and that MetLife could "benefit" from that ambiguity by avoiding sanctions, is not contrary to law. McGuire cites to three cases, two from the Northern District of Georgia and one from the Southern District of California, that he claims hold that sanctions are appropriate where a party makes misrepresentations to a court and the court relies upon those misrepresentations. *See In re Delta/AirTrain Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335 (N.D. Ga. 2012); *R&R Sails Inc. v. Ins. Co. of State of Pa.*, 251 F.R.D. 520 (S.D. Cal. 2008); *Kipperman v. Onex*, 260 F.R.D. 682 (N.D. Ga. 2009). Putting to one side the fact that these cases are not binding authority, McGuire does not demonstrate that these cases establish that sanctions are mandated where a court relies on misrepresentations of a party.

As a precedent matter, however, it is not clear from the record that MetLife made misrepresentations to the Court. McGuire lists what he believes were MetLife's misrepresentations:

- By May 31, "MetLife's counsel was confident that they had learned the *full scope* of the inadvertent errors in the review process[.]" [ECF No. 31, ¶ 7].

- "MetLife *has already devoted* (and will continue to devote) significant resources to ensure that the documents are reviewed and that all responsive, non-privileged documents are produced as quickly as possible." [*Id*.].

- "MetLife anticipates that *only a fraction* of these two sets of documents [totaling approximately 64,000 unreviewed documents] will actually be responsive to Plaintiff's requests." [*Id*. at ¶ 6].

ECF No. 65, Ex. 1 at 5-6 (emphases added by McGuire). McGuire goes on to describe why these three representations were inaccurate.

McGuire claims that it was only after he repeatedly inquired of MetLife concerning document productions in June, July, August, and September that MetLife actually discovered all the errors in their review process. *Id*. But the evidence McGuire adduces does not show that MetLife did not produce all responsive, non-privileged documents from the batch of 64,000. Although a great deal of documents appear to have been produced after July 1, 2013, McGuire does not establish that those documents came from the 64,000—as he would need to do under the alternative reading of the June 13, 2013 Order proposed above. Furthermore, MetLife's counsel only represented that they were "confident" that they had learned the full scope of errors in their review process. This is not the language of a guarantee. The fact that more errors[1] were discovered later would not render this a false representation, only an inaccurate one. Lastly, MetLife's counsel's representation that they "will continue to devote" resources to future document productions is indicative of the fact that they at least contemplated that more responsive documents could be uncovered.

McGuire does not show how any of MetLife's statements were misrepresentations that would preclude MetLife from avoiding sanctions for noncompliance with the June 13, 2013 Order. Judge Morris' ruling on this point will not be overturned.

---

[1] McGuire cannot reasonably contend, in light of the Shulman Declaration, that no errors had been remedied prior to the June 13, 2013 Order or MetLife's June 7, 2013 Response. *See* ECF No. 36, Shulman Decl. ¶ 16-17.

**B.**

McGuire's second argument is that Judge Morris' decision was contrary to the law governing sanctions for violations of Federal Rule of Civil Procedure 26(g)(3). ECF No. 65, Pl. Br. in Supp. at 7.

Rule 26(g)(3) outlines the appropriate sanctions for the improper certification of Rule 26 disclosures, discovery requests, responses, and objections. The subsection reads:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

FED. R. CIV. P. 26(g)(3). A necessary prerequisite to imposing sanctions under Rule 26(g)(3), per the text of the rule, is a certification that violates Rule 26(g)(1). Subsection (g)(1) states that:

> . . . By signing [a disclosure, discovery request, response, or objection], an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> > (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> >
> > (B) with respect to a discovery request, response, or objection, it is:
> >
> > > (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > >
> > > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> > >
> > > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

FED. R. CIV. P. 26(g)(1). Thus, McGuire must indicate a specific discovery document that was falsely certified by MetLife before sanctions may be imposed.

MetLife contends that McGuire, at the hearing before Judge Morris, stated that the June 13, 2013 Order was the basis for his request for Rule 26(g) sanctions. MetLife argues that McGuire cannot now abandon that position, as he appears to in his motion to set aside Judge Morris' bench order. But the transcript is not clear that McGuire was specifically identifying the June 13, 2013 Order as the predicate for Rule 26(g) sanctions. McGuire does claim that it is an important part of his motion for sanctions, but the portion of the transcript that MetLife highlights concerns a broad discussion of the motion, not specifically McGuire's Rule 26(g) sanction request. In any event, McGuire has identified a "certification" by MetLife that he believes is false and deserving of sanction.

McGuire claims that MetLife "violated Rule 26(g) by conducting an extraordinarily haphazard search for records despite having certified, in its December 14, 2012 discovery responses, that it was conducting a 'reasonably diligent search[.]'" ECF No. 65, Pl. Br. in Supp. at 7. Specifically, the representation to which McGuire is objecting reads "MetLife will produce any non-privileged documents responsive to this Request that it can locate after a reasonably diligent search." ECF No. 33, Ex. C. MetLife included this statement, or a substantially similar statement, in each of its specific objections to McGuire's requests for production. *See id.* (throughout). But this specific statement by MetLife is irrelevant. Rather, it is Rule 26(g) itself which imposes a duty of reasonableness on parties signing any discovery document. *See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1350 (N.D. Ga. 2012). The act of signing the document represents that the signatory "engage[d] in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." *Id.* (quoting FED. R. CIV. P. 26(g) advisory committee's note) (internal quotation marks omitted). There is no requirement that the discovery document itself make such a representation.

The document McGuire asserts violates Rule 26(g) is MetLife's objections to McGuire's requests for production. This document is governed by subsection (1)(B) of Rule 26(g). That subsection states that when an attorney or party signs such a document he certifies that he performed a reasonable inquiry to assure himself that objection meets certain prerequisites and criteria. These prerequisites include that the objection is (1) consistent with the Federal Rules, (2) either (a) warranted by law or (b) based on a nonfrivolous argument that the law be changed, (3) "not interposed for any improper purpose", and (4) "neither unreasonable nor unduly burdensome or expensive[.]" FED. R. CIV. P. 26(g)(1)(B). Nowhere does McGuire contend that the objection did not, despite being so certified, actually comply with these prerequisites or that MetLife's counsel did not perform a reasonable inquiry into the basis of its objections.

Nevertheless, McGuire contends that MetLife's lack of diligence in discovery is sanctionable under Rule 26(g). It is not. To the contrary, Rule 26(g) only covers the certification issues discussed above. McGuire relies heavily on *Kipperman v. Onex Corp.*, 260 F.R.D. 682 (N.D. Ga. 2009). In that case, the court "exercise[d] its discretion under Rules 26 and 37 and its inherent powers to award monetary sanctions." *Id*. at 700. This lack of specification is unhelpful. Particularly so where the court's discussion of Rule 26(g) consists of little more than reciting the text of the rule and is followed by the qualification that "[d]istrict courts enjoy substantially more discretion in deciding whether and how to impose sanctions under Fed.R.Civ.P. 37." *Id*. at 698.

Better guidance is found in the case *Kipperman* cites for the proposition that Rule 26(g) "was 'designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.'" *Id*. (quoting *Malautea v. Suzuki Motor Co., Ltd*., 987 F.2d 1536, 1542 (11th Cir.1993)). In *Malautea*, the Eleventh Circuit approved the district court's imposition of a sanction because a discovery objection was "interposed for the improper purposes of caus[ing] unnecessary delay,

[increasing] the cost of litigation for the Plaintiff, and [causing] the time for discovery to end before the Plaintiff had obtained the discovery material that she needed to litigate this case." 987 F.2d at 1545 (emendations in original) (internal quotation marks omitted). No such allegation has been made here and the production objection in question does not, on its face or in its readily ascertainable effect, appear to run afoul of Rule 26(g)(1)(B)'s conditions.

McGuire's allegations that Judge Morris erred in determining that "ordinary negligence" is insufficient misconduct to serve as the predicate for sanctions under Rule 26(g)(3) are also unavailing. McGuire tellingly cites to no cases that have made such a determination. McGuire's position is further belied by his statement that "negligence is enough to warrant sanctions under *all* of the relevant discovery rules", ECF No. 65, Ex. 1 at 8 n.3 (emphasis in original), which he supports with citations to cases that are silent on Rule 26(g)(3). This Court is unaware of any case in which sanctions were explicitly imposed under Rule 26(g) for ordinary negligence related generally to the discovery process and unrelated to an impermissible certification. *See, e.g.*, *R & R Sails Inc. v. Ins. Co. of State of PA*, 251 F.R.D. 520 (S.D. Cal. 2008) (awarding sanctions for an incorrect certification); *Atlas Res., Inc. v. Liberty Mut. Ins. Co.*, 297 F.R.D. 482 (D.N.M. 2011) (awarding sanctions under "Rule 26(g) or Rule 37, or both" except where the court determined defendant employed a hypertechnical reading of a discovery request in order to avoid production, then awarding sanctions under "Rule 26(g) and Rule 37"); *Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396 (E.D.N.C. 2014) (imposing sanction under Rule 37 for utter failure to produce responsive document); *Fendi Adele v. Filene's Basement, Inc.*, No. 06 CIV. 244RMBMHD, 2009 WL 855955, at *9 (S.D.N.Y. Mar. 24, 2009) (finding sanctions warranted under Rule 37 for the defendant's grossly negligent behavior during discovery and in certifying that discovery production was complete under Rule 26(g)(1)) .

The *Beach Mart* case is the most compelling, for McGuire's purposes, of those cases discussing both negligent behavior and Rule 26(g) sanctions. In that case, the court did not explicitly impose sanctions under Rule 26(g). Rather, the court analyzed the interplay between its authority to sanction under Rule 37 and a party's failure to supplement its responses to Rule 34 production requests as required by Rule 26(e). *Beach Mart*, 302 F.R.D. at 409. But the court did touch briefly on Rule 26(g) when discussing generally its power to sanction under the Federal Rules. *Id.* at 405. The court also later noted that "sanctions may be imposed even for negligent failures to provide discovery." *Id.* at 409 (quoting *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1343 (9th Cir. 1985)). This is closest connection drawn between Rule 26(g) and negligent discovery behavior of any case the Court has found.

But even assuming *Beach Mart* and *Fjelstand* both stand for the proposition that negligent failures to provide discovery are sanctionable, they do not state that sanctions must be imposed. Any argument that discovery sanctions are required under Rule 26(g) for negligent behavior is not supported by existing caselaw. In fact, at least one court, in circumstances indistinguishable from these, has held that Rule 26(g) does not apply to circumstances of simple negligence.

In *Finley v. Hartford Life & Acc. Ins. Co.*, 249 F.R.D. 329 (N.D. Cal. 2008), the court determined that the defendant, despite so certifying, "did not make the requisite 'reasonable inquiry' required by Rule 26(g)." *Id.* at 332. This was so, the court wrote, because the defendant's attorney did not "diligently supervise[] the methods [the defendant] used to gather material for discovery. Doing so may have avoided much of the controversy" that arose during discovery. *Id.* Yet, the court held that "since [the defendant's] attorneys relied, however erroneously, on [the defendant's] defective search methods, . . . they were negligent but did not

act in bad faith in certifying [the defendant's] discovery." *Id.*; *see also Fendi*, 2009 WL 855955, at *9 (applying sanctions for gross negligence under Rule 37 for defendant's failure to comply with requirements of Rule 26(g)). In light of this authority, nothing suggests that Judge Morris' ruling was inconsistent with the law regarding Rule 26(g) sanctions, let alone contrary to it. McGuire's motion to set aside Judge Morris' bench order will also be denied as it pertains to her ruling on Rule 26(g) sanctions.

Lastly, McGuire appears to also claim that MetLife's June 7, 2013 Response to Plaintiff's Motion for a Status Conference, ECF No. 31, that "MetLife's counsel was confident that they had learned the *full scope* of the inadvertent errors in the review process[,]" was false. ECF No. 65, Ex. 1 at 9. This "certification" is not deserving of sanction. This statement, contained in a response to a motion by McGuire, does not classify as a "disclosure . . . or . . . discovery request, response, or objection" for the purposes of Rule 26(g). On that basis alone, McGuire's requested relief, as it relates to this document, will also be denied.

## IV.

Accordingly, it is **ORDERED** that Plaintiff McGuire's Motion to Set Aside Bench Order on Motion for Sanctions, ECF No. 65, is **DENIED**.

Dated: April 17, 2015                                         s/Thomas L. Ludington
                                                              THOMAS L. LUDINGTON
                                                              United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 17, 2015.

                                        s/Karri Sandusky
                                        Karri Sandusky, Acting Case Manager

---